IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LEVI BIERWILER,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER GOODWIN,<br><br>Defendant. | CV 16-00009-GF-BMM-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Levi Bierwiler, an inmate proceeding in forma pauperis and without counsel, filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 alleging Defendant Goodwin discriminated against him based upon race by confiscating playing cards on December 25, 2015. (Doc. 1.) Defendant filed a motion for summary judgment arguing Mr. Bierwiler failed to exhaust his administrative remedies. (Doc. 16.) Having considered the parties' arguments and submissions, the Court finds that Defendant has not met his burden of demonstrating that administrative remedies were available and Mr. Bierwiler failed to properly utilize those remedies. The Motion for Summary Judgment (Doc. 16) should be denied.

I. **STANDARD**

Summary judgment is appropriate if there is no genuine issue of material

1

fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id*. at 159.

By notice provided on September 23, 2016 (Doc. 20), Mr. Bierwiler was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II. FACTS

### A. Underlying Facts

Mr. Bierwiler was housed at Crossroads Correctional Center ("CCC") in

Shelby, Montana in December 2015. (Statement of Undisputed Facts ("SUF"), Doc. 18 at ¶ 1.) At all times while he was housed at CCC, Mr. Bierwiler was an inmate in the custody of the United States Marshals Service. (SUF, Doc. 18 at ¶ 2.)

On December 25, 2015, Officer Goodwin confiscated playing cards on the grounds that they were in excess of the prison's allowable property limits. Mr. Bierwiler alleges Officer Goodwin targets Native Americans and Mexicans in performing cell searches such as the one done on December 25, 2015, and that the excess cards were confiscated because of race. (Complaint, Doc. 1.)

### B. Facts related to Grievance Procedures

A mandatory grievance procedure was in place at all times while Mr. Bierwiler was housed at CCC. Federal inmates such as Mr. Bierwiler are required to comply with the grievance procedure but the procedure differs somewhat depending on whether an inmate is in state or federal custody. (SUF, Doc. 18 at ¶ 4.) The grievance policy identifies what matters are grievable and which matters are non-grievable. (SUF, Doc. 18 at ¶ 7.) Mr. Bierwiler's claim that Officer Goodwin discriminated against him based on race is a grievable issue. (SUF, Doc. 18 at ¶ 7.)

The policy establishes what is generally a three-step grievance process. To

initiate the grievance process, an inmate must file an "informal resolution" within seven calendar days of the alleged incident. The prison official responding to the informal resolution then has fifteen days to respond or to extend the response deadline in writing. (SUF, Doc. 18 at ¶ 8.)

At CCC, federal inmates "may bypass or terminate the informal resolution process at any point and proceed directly to the formal grievance process." As a result, federal inmates may employ a two-step grievance process if they choose to do so. Federal inmates at CCC may also bypass the informal resolution requirement under limited circumstances by identifying their grievance as an "emergency grievance," in which case if the grievance officer determines that an emergency situation does exist, will require a response within one day. (SUF, Doc. 18 at ¶ 9.)

The second step of the grievance process, or the first step if the inmate chooses to skip the optional informal resolution, requires the inmate to file a formal grievance. The prison official responding to the formal grievance generally has fifteen days to provide a response to the formal grievance to the inmate. (SUF, Doc. 18 at ¶ 10.)

As the final step of the grievance process, an inmate unsatisfied with prior responses is required to file an appeal to the Warden/Administrator of the formal

4

grievance response. Any appeal must be filed within five calendar days of the date of the response to the inmate's formal grievance. (SUF, Doc. 18 at ¶ 11.) The Warden/Administrator's response is the final decision in the grievance process. (SUF, Doc. 18 at ¶ 12.)

Mr. Bierwiler filed a grievance related to the December 25, 2015 confiscation of playing cards (Grievance No. 12-15-G22). (SUF, Doc. 18 at ¶ 15.) The response, dated December 29, 2015, states "fill out lost stolen/claim form." (Doc. 19-2 at 6.)

Mr. Bierwiler did not submit an appeal to the warden/administrator from the December 29, 2015 decision he received from CCC staff in response to Grievance No. 12-15-G22. (SUF, Doc. 18 at ¶ 16.)

### III. DISCUSSION

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must

"complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth,* 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"

*Ross v. Blake*, 136 S.Ct. 1850, 1858 (June 6, 2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

Mr. Bierwiler filed a grievance regarding Officer Goodwin taking his playing cards on December 25, 2015. The response to the grievance was that he

should fill out a lost stolen/claim form. (Doc. 19-2 at 6.) There is no indication in the record whether Mr. Bierwiler filled out this form, whether his cards were replaced, or what occurred thereafter. If his cards were replaced then there may have been no need to appeal the result. Mr. Bierwiler argues that he "won" two grievances filed against Defendant and that his cards were to be replaced and the officer was found in the wrong. (Response, Doc. 22.)

"The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance. *Brown*, 422 F.3d at 935 (citing *Booth*, 532 U.S. 731). Thus, once a prisoner has won all the relief that is available, his administrative remedies are exhausted. *Brown*, 422 F.3d at 935. CCC's grievance procedure provides that if an inmate is "not satisfied" with the decision of a formal grievance, he may submit an appeal. Mr. Bierwiler contends he "won" his grievances. (Response, Doc. 22.) He was therefore presumably satisfied with the result and there would have been no need to appeal.

Defendants have not shown that Mr. Bierwiler failed to exhaust the administrative remedies available to him. Defendants' Motion for Summary Judgment should be denied.

Based upon the foregoing, the Court issues the following:

**RECOMMENDATIONS**

Defendant's Motion for Summary Judgment (Doc. 16) should be **DENIED**.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 21st day of June 2017.

/s/ John Johnston
John Johnston
United States Magistrate

---

[1] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.